IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

TYRONE ELLIS                                                                                                   PLAINTIFF

v.                                        Civil No. 6:22-CV-06062-SOH-MEF

DR. THOMAS DANIEL
(Ouachita River Correctional Unit),
NANNETTE VOWELL
(Medical Director/Doctor/Provider),
PATRICK DRUMMOND
(Advance Practice Nurse),
JOHN DOE[1]
(Provider/Doctor/Medical Director),
and WELLPATH, LLC                                                                                           DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court are Defendants' Motion for Summary Judgment, Statement of Facts, and Brief in Support (ECF Nos. 26-28), the Plaintiff's Response and Statement of Facts (ECF Nos. 34, 35), and the Defendants' Reply (ECF No. 36).

### I.   BACKGROUND

Plaintiff, Tyrone Ellis ("Ellis"), filed his Complaint on June 2, 2022. (ECF No. 1). Due to deficiencies in the Complaint, the Court entered an Order that same day directing him to file an Amended Complaint. (ECF No. 5). When Ellis failed to do so by the deadline, the Court entered

---

[1] This Defendant has not been identified.

1

a Show Cause Order on July 26, 2022. (ECF No. 6). Ellis timely filed a Response, and the Court entered an Order granting him a 30-day extension of time to file his Amended Complaint. (ECF Nos. 7, 8). Ellis filed his First Amended Complaint on September 9, 2022. (ECF No. 10). Because Ellis failed to follow the court-approved Complaint form directions and attached prohibited exhibits to his Complaint to be incorporated by reference, the Court entered another Order directing him to file a Second Amended Complaint. (ECF No. 11). Ellis filed his Second Amended Complaint on September 30, 2022.[2] (ECF No. 14). He alleges that medical treatment for his muscular sclerosis ('MS") was denied and/or delayed while incarcerated in the Arkansas Division of Correction ("ADC"). (*Id*.).

For his first claim, Ellis alleges that the Defendant, Dr. Thomas Daniel, denied and delayed his medical care for his muscular sclerosis ("MS") from February 14, 2020, through July 21, 2020. (ECF No. 14, p. 4). He alleges Defendant Daniel delayed his receipt of the MS drug Mavenclad. (*Id*. at 4-5). He directs the Court to refer to the attached ADC grievance SNN-00129. (*Id*. at 5). He alleges he was injured because his MS was not treated, causing his immune system to attack his spine. (*Id*.). This resulted in a loss of ability to ambulate without assistance, and increased the spasticity and tremors in his hands, making it difficult to eat. (*Id*. at 6).

For his second claim, Ellis alleges that the Defendant, Nannette Vowell, denied and delayed his medical care for his MS from February 14, 2020, through July 21, 2020. (ECF No. 14, p. 7). He repeats the allegations in his first claim as to Defendant Vowell. (*Id*. at 7-8).

---

[2] The Court notes that despite the Complaint form and the Court Order (ECF No. 11) directing him not to do so, Ellis persisted in attaching prohibited exhibits to his Second Amended Complaint and attempting to incorporate them by reference. These attachments will not be considered as part of the Second Amended Complaint.

2

For his third claim, Ellis alleges that Defendant John Doe and Defendant Patrick Drummond[3] denied and delayed his medical care for his MS while he was in the ADC East Arkansas Regional Unit from October 16, 2019, through July 21, 2020. (ECF No. 14, p. 9). He alleges these Defendants delayed his receipt of the MS medication Ocrevus for his MS. (*Id*. at 10). Ellis again refers to ADC grievance SNN20-00129. (*Id*.). He otherwise repeats his allegations from Claim One indicating that his MS progressed due to the lack of treatment. (*Id*.).

For all three claims, Ellis proceeds against all Defendants in both their official and individual capacities. (ECF No. 14, p. 10). To support his official capacity claims, he alleges that Defendants work for Wellpath, and that the company "does not offer a policy for inmates in [the] ADC."[4] (*Id*.). Ellis seeks $15 Million in compensatory damages, $35 Million in punitive damages, and injunctive relief. (*Id*. at 15). He again refers to ADC grievance SNN20-00129. (*Id*.).

The Court takes judicial notice that Ellis brought essentially identical claims concerning his MS drugs Ocrevus and Mavenclad in *Ellis v. Long*, Case No. 6:20-cv-06060 ("*Ellis I*"). His allegations in that case covered a slightly shorter timeframe, and were brought against Defendants Daniel, Vowell, and a few Defendants other than those named in this case. The initial Complaint in that case was filed on June 11, 2020. (6:20-cv-06060 at ECF No. 1). The timeline for his claims in *Ellis I* started in February 2020 and ended in approximately May 2020. (6:20-cv-06060 at ECF No. 68, 70). ADC grievance SNN20-00129 was addressed in that case. Ellis filed his Complaint in *Ellis I* over a month before the ADC grievance process for SNN20-00129 was completed. *Ellis*

---

[3] Ellis appears to have crossed Defendant Drummond out in this section, but he included him in the listed Defendants. As such, he was listed and served as a Defendant. Defendant Doe has not been identified.

[4] Until Ellis filed his summary judgment response, the meaning of this statement was unclear. It appears that Ellis is attempting to set up the argument that Wellpath does not have an inmate grievance policy for ADC inmates, therefore no administrative grievance exhaustion is necessary.

*I* was dismissed without prejudice on February 24, 2022, because Ellis had failed to exhaust his administrative remedies for any grievance, including SNN20-00129, as to his MS drug claims. (6:20-cv-06060 at ECF No. 70).

In the instant case, the Defendants filed their Motion for Summary Judgment for Want of Administrative Exhaustion on February 28, 2023. (ECF Nos. 26-28). They argue summary judgment in their favor is appropriate because Ellis filed 20 medical grievances between October 16, 2019, and June 2, 2022, and he failed to complete the grievance process for any grievance which assigned wrongdoing to the Defendants. (*Id*.).

Ellis filed his Response and Statement of Facts.[5] on March 15, 2023. (ECF Nos. 35, 36). He argues that Defendants are employees of Wellpath, LLC, the private medical contractor for the ADC, and, as Wellpath does not have a grievance policy for ADC inmates, it was not necessary for him to exhaust any administrative grievances for this case. (ECF No. 35 at 2, 11, 13, 22, 34, 36). He further argues that "Grievance number SNN20-00129 is the only medical grievance Plaintiff filed that identifies Defendant Thomas Daniel regarding the subject matter of this lawsuit since he initiated this action . . . ." (*Id*. at 4, 15, 27, 38). "The other 19 formal medical grievances cited do not concern do not concern the subject matter of this lawsuit . . .." (*Id*.) (repetition in original).

Defendants filed their Reply on March 22, 2023. (ECF No. 36). They note that Ellis admitted in his Response that, other than SNN20-00129, the 19 other grievances they cited in their Brief did not concern this lawsuit, and thus were not exhausted as to his claims. (*Id*.). They further note that Ellis disputed Statement of Fact ¶ 20, arguing that Defendant Daniel delayed making an

---

[5] Ellis filed a separate Statement of Facts as to each Defendant in one document, but they appear to be the same except for the Defendant's name at the beginning of each.

appointment for eight days, "but that is not what plaintiff *grieved* in SNN20-00129, nor what was addressed in the response thereto." (*Id*. at 2) (emphasis in original). They argue grievance SNN20-00129 names Defendant Daniel, but does not allege any wrongdoing by him, thus the grievance is irrelevant to this case. (ECF No. 27, p. 6, ¶ 20; ECF No. 28, p. 10).

Ellis filed an unauthorized sur-reply on March 31, 2023. (ECF No. 37). This was struck from the summary judgment record on April 3, 2023. (ECF No. 38).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The Eighth Circuit Court of Appeals has recognized only two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (explaining a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

6

### A.     Applicability of the ADC Grievance Policy

Ellis argues he has brought this case against Wellpath, LLC, and its employees, and that Wellpath does not have a grievance policy for ADC inmates to use against the company or its employees. Thus, he contends, no grievance policy was available, and exhaustion is not required. His argument is contradicted by the summary judgment record because the ADC grievance policy is expressly intended for inmate use concerning their interactions with private contractors working at the ADC.

Because SNN20-00129 was filed on May 19, 2020, the controlling ADC grievance policy is AD 19-34. (ECF No. 27 at 1, n. 1). Section III of the policy provides the controlling policy definitions. (ECF No. 27-2 at 1-3). Section III(B)(4) provides that an ADC inmate is to use the ADC grievance process regarding issues with "[a]n action of employee(s), *contractor(s)*, or volunteer(s) that personally affects the inmate." (*Id*. at 2) (emphasis added). Wellpath LLC and its employees are contracted with the ADC to provide medical care for ADC inmates. Thus, the ADC grievance policy applies to any issue Ellis may have with their work at the ADC. As it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion, Ellis's argument that the ADC grievance policy does not apply to issues with Wellpath LLC or Wellpath employees is plainly contradicted by the summary judgment record.

### B.     Exhaustion based on SNN20- SNN20-00129

Ellis failed to exhaust SNN20-00129 for his claims in this case. On May 19, 2020, he submitted the following statement in SNN20-00129:

> I am complaining that May 11, 2020 I seen Doc Daniels in a c[h]ronic care visit and he verbally told me that I had an appointment to be scheduled to receive

> medication Orcrevus though IV at UAMS.[6] and I am still in need of the medication because I have still not received that appointment.

(ECF No. 27-3 at 27). Ellis received a response the same day, which stated: "We are waiting on appointment to be scheduled by UAMS. However you will not be told what the date/time is." (*Id*.). Health Services responded on June 24, 2020. (*Id*. at 25). The Health Services Administrator, Crystal McCoy stated: "UAMS cancelled your infusion due to the COVID-19 pandemic. They have recommended a different treatment at this time. That medication has been ordered at the specialty pharmacy and will be initiated when it arrives. I find your grievance with merit but resolving." (*Id*.). Ellis appealed this response the same day, stating: "The medication is called Oral Mavenclad that I still have not received from the Specialty Pharmacy." (*Id*.).

Ellis received the final appeal response on August 11, 2020. In it, ADC Director Rory Griffin provided the following grievance summary and response:

> On May 19, 2020, you grieved you have not gone out for your appointment to receive treatment. You stated you saw Dr. Daniel on May 11, 2020, and he told you that you had an appointment to receive Orcevus by IV at UAMS, but you have not gone out for the appointment.
>
> The medical department responded, "UAMS cancelled your infusion due to the COVID-19 pandemic. They have recommended a different treatment at this time. That medication has been ordered at the specialty pharmacy and will be initiated when it arrives. I find your grievance with merit but resolving."
>
> In your appeal, you state the medication is called Mavenclad and you have not received it.
>
> A review of your electronic Medical Record indicates May 11, 2020, you were seen by Dr. Daniel for chronic care. Dr. Daniel noted you saw UAMS neurology on February 14, 2020, and Mavenclad was suggested VS. Orcevus infusions. Dr. Daniel noted the unit provider opted for Orcevus, and you were scheduled for August. Dr. Daniel noted he emailed the scheduler to ensure your appointment was scheduled. On May 19, 2020, the scheduler noted the UAMS neurology department was contacted regarding your infusion, and she was informed infusions were not

---

[6] The University of Arkansas for Medical Sciences.

> being done at that time due to COVID-19; however, UAMS neurology recommended starting Mavenclad. On May 20, 2020, the scheduler noted per the unit provider the prescription for Mavenclad was not received, and a message was left with UAMS for them to fax the prescription. On June 3, 2020, you received the chicken pox vaccine which was required for the Mavenclad per the encounter note. On June 9, 2020, the medical department received the prescription for Mavenclad; however, the February 14, 2020 recommendations indicate you were counseled on no live or live attenuated vaccines within four to six weeks preceding treatment. On July 13, 2020, a nurse entered a note for the Mavenclad order, and on July 21, 2020, you began receiving the Mavenclad.
>
> The medical department.found your grievance with merit and you began receiving Mavenclad; therefore, your appeal is without merit. (ECF No. 27-3 at 24).

Ellis filed his Complaint in this case on June 2, 2022. (ECF No. 1). Thus, unlike *Ellis I*, the ADC grievance process for SNN20-00129 was exhausted before he initiated this case. Ellis did not, however, name any Defendant other than Defendant Daniel in this grievance. AD 19-34 requires that an inmate name the personnel involved in the incident grieved. (ECF No. 27-2 at 6). Thus, administrative remedies were not exhausted as to Defendants Vowell, Drummond, Doe or Wellpath, LLC.

This leaves Defendant Daniel, who was named in the grievance. The PLRA exhaustion requirement gives prisoners an incentive to use the grievance process, gives prisons a fair opportunity to correct their own errors, reduces the quantity of federal prison suits, improves the quality of those suits that do go to federal Court, and improves the quality of the record. *Woodford v. Ngo*, 548 U.S. 81, 94 (2006). A grievance which does not allege any wrongdoing or violation of an inmate's rights by a named defendant cannot serve to exhaust an inmate's § 1983 claim because the grievance did not put the ADC on notice of an error to be corrected. *See Jones*, 549 U.S. at 219 (explaining that the PLRA's exhaustion requirement allows "a prison to address complaints about the program it administers before being subjected to suit"); *Manning v. Barden*, 220CV00127DPMPSH, 2021 WL 5578793, at *3 (E.D. Ark. Oct. 19, 2021), *report and*

*recommendation adopted*, 2:20-CV-127-DPM-PSH, 2021 WL 5566791 (E.D. Ark. Nov. 29, 2021) (an exhausted grievance which fails to allege any wrongdoing on part of prison officials did not put prison officials on notice for § 1983 complaint); *Waller v. Kelley*, 956 F. Supp. 2d 1007, 1014 (E.D. Ark. 2013) (an exhausted grievance naming a defendant for an inadequate medical care claim cannot serve to exhaust a § 1983 complaint based on other claims).

Ellis's sole reference to Defendant Daniel in SNN20-00129 is that he met with him "in a c[h]ronic care visit and he verbally told me that I had an appointment to be scheduled to receive medication Orcrevus though IV at UAMS." (ECF No. 27-3 at 27). The Court will interpret this to mean that Defendant Daniel told Ellis that he was due to be scheduled for an appointment at UAMS for his Orcrevus infusion. Ellis does not allege that Defendant Daniel refused to schedule the appointment, failed to schedule the appointment, delayed in scheduling the appointment, or in any way interfered with the scheduling of the appointment. In short, there is nothing in this grievance to indicate that Defendant Daniel did anything wrong. Instead, any delay or change in Ellis's MS treatment was caused by the COVID-19 pandemic. Every response to SNN20-00129 indicates that the reason for both the delay in receiving treatment and the change in treatment from an Orcrevus infusion to oral Mavenclad was that the COVID-19 pandemic had seriously impacted the UAMS Hospital's ability to see and treat patients, as it did for all hospitals. In the absence of any alleged wrongdoing on the part of Defendant Daniels, SNN20-00129 cannot serve to exhaust Ellis's § 1983 claims against him in this case.

## IV. CONCLUSION

For the reasons discussed, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 26) be **GRANTED** and Plaintiff's Second Amended Complaint (ECF No. 14) be **DISMISSED WITHOUT PREJUDICE.**[7]

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 21st day of June 2023.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

---

[7] Claims that are dismissed for failure to exhaust administrative remedies should be dismissed without prejudice. *See Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003) (*per curiam*).